UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROY BLANCHARD, individually, as
guardian for a minor, C.B., and as
Personal Representative of the ESTATE
OF HEATHER A. BLANCHARD, and
IAN BLANCHARD, individually,

                    Plaintiff,

          v.

UNITED STATES OF AMERICA, and
JANE and JOHN DOES 1-10, in their
respective individual capacities,

                    Defendant.

CASE NO. C23-5460 BHS

ORDER

This matter is before the Court on Defendant United States's motion for partial

summary judgment and to exclude testimonies of the Blanchards' experts, Anthony

Choppa M. ED. and Marsha Hedrick Ph.D. Dkt. 41. Roy Blanchard's Negligent Infliction

of Emotional Distress claim is dismissed because he cannot meet the threshold

requirement to show that he unwittingly encountered his wife Heather's body given his

concession that he requested to view her in the ICU. Because the wrongful death statute

does not allow the Blanchards to recover for Roy's lost wages or for grief and mental

1  anguish, the claim to recover Roy's lost wages is dismissed and Mr. Choppa's expert

2  testimony aimed at calculating damages for Roy's lost wages and Dr. Hedrick's opinions

3  on the Blanchards' grief and mental anguish is barred.

4  ## I.   BACKGROUND

5  This case arises out of the death of Heather[1] Blanchard at Madigan Army Medical

6  Center (MAMC) after surgery on January 4, 2022. The details of the surgery and death

7  are described in the Court's previous order, Dkt. 30.

8  Heather's husband Roy Blanchard was present in the hospital when Heather first

9  finished surgery. Dkt. 46-1, Roy Dep. at 93–94. He was told that Heather had been

10  moved to the ICU and that she had a bleed. Dr. Scribner came into the ICU waiting room

11  told him that they had had to stop the initial procedure, move Heather to the ICU, and

12  that they were "going to wake her up in about 30 minutes and you'll be able to go back

13  with her." *Id*.

14  A short time after Roy heard medical staff call a code blue and saw "crash cart,

15  and staff and doctors running" into the ICU. Dkt. 46-1 at 94–95. Dr. Scribner again came

16  out of the ICU to tell Roy that Heather "appeared to have additional bleeding, that she

17  was receiving additional blood and that the general surgery and vascular surgery were

18  there." Dkt. 46-2 Scribner Dep. at 34–35. Dr. Scribner returned later with a hospital

19  Chaplin and told Roy that Heather had died. *Id*.

20

21

22  [1] The Court refers to the various members of the Blanchard family by first name for clarity when referring to them as individuals. It intends no disrespect.

1    Roy immediately asked to see Heather. Dkt. 46-1 at 32. Hospital staff took steps to

2  clean Heather and the room before Roy entered. Dr. Scribner asserts that "we tried to

3  cover her and clean her as much as possible before he went in there, so I believe it would

4  have been her hands and arms and her face [that were uncovered]." Dkt. 46-2 at 40. The

5  "crash nurse" in the intensive care unit, Michelle Barr, testified that "we had…cleaned

6  her body up and made her as presentable as – as we could" but acknowledged there was

7  "lot of blood" in the room and on Heather. Dkt. 46-3, Barr Dep, at 6:23-7:7; 24:1-25. Roy

8  testified to his experience seeing Heather's body:

9       It's heartbreaking. It was traumatic. I've, from, from being a cop,
        the military, I've seen so much trauma and, and shootings and
10      stabbings and rapes and just god-awful stuff. Nothing prepared,
        nothing prepared me for what I saw, and it was just my wife's body
11      just laying there. You know, I've, I've, from my time as a cop, I,
        I've been to plenty of ICUs and emergency rooms and the, the
12      smells and the, the sites. You know, you could tell that she had
        been in surgery. You could tell that, you know, from the, from the
13      room a lot had gone on.

14      You know, there was a, you know, like a trash receptacle where,
        you know, linens and towels and instruments, not instruments in
15      the, in the receptacle, but you could, you could tell that, you know,
        there was wrappers and stuff on the floor. It, it wasn't completely
16      sanitized and I didn't expect it to be. You know, her body was still
        warm. There was a small tear in the left corner of her eye. I saw
17      that, that there was no life and she was gone.
        …
18      I said I was so sorry...there was a sheet or a blanket typical of, of
        what you would see, but you could still, you know, there were,
19      there was trace spots of blood, stuff like that. They, they, they
        cleaned it up as best as they could, but you know, I'm not, I'm not
20      naive as to what goes on in an ICU or an or, or an emergency
        room. I've seen it plenty of times, just not my wife

21  Dkt. 46-1 at 98–99.

22

ORDER - 3

Roy asserts his struggle with grief following Heather's death has impacted his career and earning capacity. At the time of Heather's death, Roy worked at J.P. Morgan in a private client banker position. Dkt. 46-1 at 36–39. He took a three month leave of absence for bereavement, but struggled to succeed upon returning. *Id*. He ultimately left J.P. Morgan in November 2022. *Id*. at 39–42. Roy then worked part time, a seasonal job at Crystal Mountain as a ticket checker and lift operator. *Id*. at 49–51. He then enrolled in barber school and became a licensed barber at Buzzerd's Barber Shop in Tacoma where he still works today. *Id*. at 46–51.

Roy sued the United States and Jane and John Does 1–10 on behalf of himself, Heather's estate, and their children, C.B. and Ian Blanchard. Dkt. 31. He alleges one claim of "Negligence in the Care and Treatment of Plaintiff" under RCW 7.70.040. *Id*. at 12. The government concedes liability for medical negligence. Dkt. 35. Roy amended his complaint to add a claim for negligent infliction of emotional distress (NIED). Dkt. 31 at 12. He asserts that the government negligently inflicted emotional distress "when they told [him] that his wife had suffered complications during the surgery, told him that she died as a result of the surgery, and allowed him to see Ms. Blanchard while she was covered in blood." *Id*. The issues remaining for trial are the NIED claim and the nature and extent of plaintiffs' damages arising out of both claims.

The government moves for partial summary judgment and to exclude certain experts. Dkt. 41. It argues that Roy's NIED claim should be dismissed as a matter of law because he fails to show negligent conduct and cannot show that he "unwittingly" entered the room to view Heather's body because he requested to see her. It also seeks summary

judgment on Roy's claim for lost earnings. It argues because Roy cannot support a claim for NIED, his recovery is limited to the damages designated by statute for his wrongful death claim, which does not include lost earnings or allow recovery for mental anguish. *Id*. at 9. If Roy's claim for lost earnings is dismissed, it argues Dr. Choppa's opinion about Roy's ability to work and earn money should be excluded as it would be irrelevant. *Id*. at 14. Similarly, it argues Dr. Hedrick's opinion that the Blanchard family suffered mental anguish should also be excluded because the wrongful death statute does not permit beneficiaries to recover for grief-related damage. *Id*. at 15.

Roy responds that his NIED claim survives because there is a genuine issue of material fact as to whether the conduct giving rise to the negligent infliction of emotional distress in this case constitutes "health care" and as to "the cause and nature" of his emotional distress. *Id*. at 25–16. Roy argues that his lost earnings claim and supporting expert testimony is viable because RCW 4.20.010 allows him to recover all damages that were proximately caused by the government's negligence.

The issues are addressed in turn.

## II.   DISCUSSION

### A.    Legal standard for summary judgment

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must *view all evidence in the light most favorable to the nonmoving party* and draw all reasonable inferences in

1    that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986);

2    *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact

3    exists where there is sufficient evidence for a reasonable factfinder to find for the

4    nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence

5    presents a sufficient disagreement to require submission to a jury or whether it is so one-

6    sided that one party must prevail as a matter of law." *Id*. at 251–52.

7        The moving party bears the initial burden of showing that there is no evidence that

8    supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477

9    U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then

10   must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the

11   nonmoving party fails to establish the existence of a genuine issue of material fact, "the

12   moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

13   There is no requirement that the moving party negate elements of the non-movant's case.

14   *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met

15   its burden, the non-movant must then produce concrete evidence, without merely relying

16   on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477

17   U.S. at 248.

18   **B.    NIED claim fails as a matter of law**

19       Roy articulates three grounds for his NIED claim: (1) when hospital staff and

20   doctors told him that his wife had suffered complications during the surgery, (2) when

21   they told him that she died as a result of the surgery, and (3) when they allowed him to

22   see Heather "while she was covered in blood." Dkt. 31 at 13.

1    The government seeks to dismiss his NIED claim because it argues that he can

2    point to no material fact that would establish non-medical negligent conduct by any

3    MAMC employee apart from the medical treatment provided to Heather, and his claim is

4    therefore governed exclusively by RCW § 7.70. Dkt. 41 at 8. Furthermore, it argues Roy

5    cannot meet the threshold requirement for a bystander NIED claim because he cannot

6    show that he "unwittingly" encountered his wife's body when he concedes requested to

7    see her immediately after learning she had died from bleeding complications. *Id*. at 9.

8        Roy responds that there is a dispute of material fact as to whether updating him

9    about his wife's status arises out of health care under § 7.70 and that his "bystander"

10   NIED claim cannot be dismissed on summary judgment because there is a dispute of

11   material fact as to "whether provider conduct denied him the opportunity to be with his

12   wife." Dkt. 44 at 15 (citing *Reed v. ANM Health Care*, 148 Wn. App. 264, 272-73 (2008)

13   (genuine factual dispute regarding whether plaintiff's NIED injuries resulted

14   from health care where doctor misinformed plaintiff about medical status of her partner

15   and prevented plaintiff from being in the room in the final moments before her partner's

16   death)). He asserts that his "emotional distress stems from the traumatic circumstances of

17   his wife's death and the way he was notified and encountered her body, not from any act

18   or omission in her medical care" and that this claim should therefore go to the jury. Dkt.

19   44 at 13.

20       Even if the Court were to credit Roy's position, it does not defeat summary

21   judgment here because he fails to demonstrate that any MAMC employee conduct was

22   negligent, inappropriate, or a breach of any duty of care owed to Roy. Unlike the case he

relies on, *Reed v. ANM Health Care*, Roy does not assert that staff lied to him or that they failed to let him see his wife in a timely manner. He instead argues that when Dr. Scribner informed him that Heather had a bleed but that Roy could see her in 30 minutes, it gave Roy "the impression that Heather was stable and that he would soon be reunited with her but that was not true." *Id*. Roy does not allege that Scribner intentionally or negligently misled him, nor does he explain how truthfully keeping Roy informed of Heather's progress breached any duty of care to Roy. Similarly, Roy's assertion that "the way he was notified" about his wife's death constitutes NIED fails to identify any breach of duty to him. Roy asserts that Dr. Scribner was "tearful and polite" when she informed Roy of Heather's death, and that he did so in the presence of a Chaplin. *Id*. He does not articulate any breach of duty, but instead emphasizes that "the sudden and traumatic notification of his wife's death" gave rise to his PTSD. *Id*. The traumatic effect of the events that Roy experienced does not render the hospital staff's actions negligent. Roy offers no dispute of material fact that could substantiate his NIED claim based on the communications regarding Heather's health regardless of whether those communications arise out of health care under § 7.70. Consequently, the only remaining allegation that could serve as the basis for his NIED claim is that he was permitted to see his wife after she died "while she was covered in blood." Dkt. 31 at ¶ 5.2.

Washington law allows family members to recover "for emotional distress caused by observing an injured relative at the scene of an accident after its occurrence and before there is substantial change in the relative's condition or location." *Hegel v. McMahon*, 136 Wn.2d 122, 132 (1998). This is referred to as a "bystander" claim. A bystander

1    plaintiff "must arrive on the scene *unwittingly* in order to maintain a cause of action for

2    [NIED]." *Colbert v. Moomba Sports, Inc.*, 163 Wn.2d 43, 59 (2008) (citation omitted).

3    Plaintiffs cannot recover for "the emotional distress one experiences at the scene after

4    already learning of the accident before coming to the scene." *Id.* at 60.

5          Even construing the facts and all reasonable inferences in his favor, Roy cannot

6    show that he unwittingly encountered Heather's body. Upon Dr. Scriber informing him of

7    her death, he immediately requested to go and see her in the ICU. Before making that

8    request, he knew that she had died from bleeding complications and he knew that a

9    "CODE blue" had been called in an effort to save her. He concedes that he was mentally

10   prepared to see her and the room in an unclean state: "it wasn't completely sanitized *and*

11   *I didn't expect it to be*." Dkt. 46-1 at 98–100. He acknowledges he was "not naive as to

12   what goes on in an ICU [or] an emergency room" because he had "seen it plenty of

13   times." *Id*. His concession that hospital staff had "cleaned it up as best as they could"

14   additionally undermines that the staff acted negligently and runs counter to the bystander

15   NIED requirement that he observe Heather before there was any "substantial change in

16   the relative's condition or location." *Colbert*, 163 Wn.2d at 62. Roy's argument that there

17   is a dispute of material fact as to "whether provider conduct denied him the opportunity

18   to be with his wife" cannot be squared with the record. Dkt. 44 at 15. He does not explain

19   what facts or inferences could support this assertion, nor reconcile it with his concession

20   that Dr. Scribner promptly granted his request to see Heather. Consequently, he falls

21   short of establishing a dispute of material fact. *Lujan*, 497 U.S. at 888–89 (missing facts

22   will not be presumed).

1    That the facts fail here to meet the stringent requirement requirements of an NIED

2    claim is in no way a measure of the gravity of the emotional distress that Roy

3    undoubtably experienced the day his wife died. Because there is no dispute of material

4    fact that can salvage his NIED claim, the government's motion for summary judgment

5    dismissing that claim as a matter of law is **GRANTED**.

6    **C.    Roy's claim for lost earnings**

7    The parties agree that the Blanchards are entitled to the economic and

8    noneconomic damages caused by Heather's wrongful death. *See* RCW § 4.20.010. Roy

9    claims that the statute allows him to recover his own personal lost wages stemming from

10    his mental health struggles after Heather's death that led to his career changes. Dkt. 44 at

11    16. The government argues that Roy cannot collect for his own lost wages, but rather is

12    limited to Heather's economic damages (lost wages and household services), and

13    noneconomic damages for loss of consortium and Heather's pre-death pain and suffering.

14    Dkt. 41 at 11. It argues that because Roy "cannot recover damages for his grief and

15    anguish, he cannot recover lost wages that he alleges stem from this grief and anguish."

16    *Id*. at 12.[2] The parties' arguments focus on the significance of 2019 amendments to RCW

17    4.20.010. The current and former version of the relevant portion of the statute with the

18    2019 additions bolded read as follows:

19

20    [2] The parties also dispute whether plaintiffs gave sufficient notice to the government of
their claim for Roy's lost wages. The government argues that Roy does not seek to recover his
21    own loss of earning capacity/wages in his amended complaint, but that he instead impermissibly
first raised that claim in his interrogatories. Dkt. 41 at 11–12. Because the Court exercises its
22    discretion to reach the merits of Roy's request for lost wages, the dispute over notice is denied.

| Former version | Current version (2019 additions in bold) |
| --- | --- |
| When the death of a person is caused by the wrongful act, neglect, or default of another his or her personal representative may maintain an action for damages against the person causing the death; and although the death shall have been caused under such circumstances as amount, in law, to a felony.<br><br>(Effective July 22, 2011 to July 27, 2019) | (1) When the death of a person is caused by the wrongful act, neglect, or default of another person, his or her personal representative may maintain an action against the person causing the death **for the economic and noneconomic damages sustained by the beneficiaries listed in RCW 4.20.020 as a result of the decedent's death, in such amounts as determined by a trier of fact to be just under all the circumstances of the case**. |

The government argues that as it pertains to damages, the 2019 addition that plaintiffs can recover economic and noneconomic damages "merely clarified what was absent from the prior version of Wash. Rev. Code § 4.20.010, but under case law interpreting the statute, was already recoverable." *Id*. It points to cases and pattern jury instructions supporting that plaintiffs have long been able to recover the decedent's economic damages, but have never been allowed to recover for their own mental anguish or their own lost wages. Dkt. 41 at 11 (citing *Garcia v. Strong Trucking*, Inc., 169 Wash. App. 1016, 2012 WL 2877652 at *2 (2012) (unreported) ("the Washington State Supreme Court expressly construed the wrongful death statute as not allowing for recovery for grief.").

It asserts that the only substantive "new" change from the 2019 amendment is that it removed the restrictions that parents and siblings could only sue for wrongful death in Washington if they were financially dependent on the decedent and Washington

residents. In support, it points to the House Bill Report summarizing the 2019

amendments as follows:

> *Beneficiaries.* The dependence and residency requirements for secondary
> beneficiaries (parents and siblings) **are removed**. A parent or sibling may
> be a beneficiary of the action if there is no spouse, domestic partner, or
> child, without having to show dependence on the deceased and residence in
> the United States at the time of the person's death.
>
> *Damages.* A specific statement is added that both economic and
> noneconomic damages are recoverable against the person causing the death
> in such amounts as the trier of fact determines to be just under the
> circumstances of the case.

House Bill Report, H.B. 1135, 66th Leg., 2019 Reg. Sess., at 2 (Wash. 2019) (emphasis

added).

The government emphasizes that even after the wrongful death statute was

amended in 2019, the Washington Pattern Jury Instruction (WPI) that clarify the

available categories of damages for the statute remained the same. The WPI, *Measure of

Damages—Wrongful Death—Action for Benefit of Spouse*, provides that juries should

consider economic damages and noneconomic damages, and defines the same as follows:

> **(1) Economic Damages:**
> (a) You should consider as past economic damages any benefit of value, including
> money, goods, and services that [Roy] would have received from [Heather] up to
> the present time if [Heather] had lived.
>
> (b) You should *[also]* consider as future economic damages what benefits of
> value, including money, goods, and services [Heather] would have contributed to
> [Roy] in the future had [Heather] lived.
>
> **(2) Noneconomic Damages:**
> You should also consider what [Heather] reasonably would have been
> expected to contribute to [Roy] in the way of [marital] consortium…
>
> …

1

> In making your determinations, you should take into account [Heather's]
> age, health, life expectancy, occupation, and habits *[of industry,*
> *responsibility and thrift]*. **You should also take into account [Heather's]**
> **earning capacity, including [Heather's] actual earnings prior to death**
> **and the earnings that reasonably would have been expected to be**
> **earned by [Heather] in the future.** In determining the amount that
> [Heather] reasonably would have been expected to contribute in the future
> to [Roy] you should also take into account the amount you find [Heather]
> customarily contributed to [Roy].

6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 31.02.01 (7th ed.) (formatting omitted)

(emphasis and party names added). The government argues that the WPI makes plain that

plaintiffs have long been able to collect economic and noneconomic losses, but always

for money and "consortium" that the *decedent* would have contributed.

In contrast, the government argues the pattern instruction on the measure of

damages in a wrongful death action brought by a parent for the death of a child *were*

modified after 2019 amendments to that statute. Dkt. 49 at 10 (citing 6 Wash. Prac.,

Wash. Pattern Jury Instr. Civ. WPI 31.06.01 (7th ed.) ("This instruction has been

modified for this edition" … because "RCW 4.24.010 was amended effective July 28,

2019…")). It emphasizes that in the comments section for the wrongful death of a child

pattern instruction, the authors are explicit that mental anguish is not recoverable under

the wrongful death statute at issue here, RCW 4.20.010:

> **There are several somewhat related statutes.** The potentially recoverable
> noneconomic damages differ depending upon whether the claims for
> damages arising out of the death of a child are pursued under the wrongful
> death statute, RCW 4.20.010, or the child injury or death statute, RCW
> 4.24.010. *For instance, the recovery of the parents' personal grief, mental*
> *anguish, and suffering as a result of the child's death is not recoverable*
> *under RCW 4.20.010 et seq.*

1   Wash. Pattern Jury Instr. Civ. WPI 31.06.01 (7th ed.) (emphasis added). The Government

2   argues if the Washington legislature wished to allow recovery for damages stemming

3   from grief, it could have made amendments to mirror the language for the statute for the

4   parents of deceased children, but it chose not to.

5        The Blanchards respond that 2019 amendments to RCW §§ 4.20.010 and 4.20.020

6   "rendered many earlier cases limiting evidence or damages obsolete." Dkt. 44 at 17. They

7   argue that the "statute's remedial and retroactive nature requires a broad, liberal

8   interpretation to fully compensate beneficiaries." *Id*. at 20. In support, they point to how

9   the Washington Supreme Court interpreted amendments to the statute for recovery from

10  the wrongful death of a child in the 1971 case *Wilson v. Lund*, 80 Wn.2d 91 (1971).

11  There the court held that language added to the statute in 1967 allowing recovery for

12  "loss of love…and…injury to or destruction of the parent-child relationship" required it

13  to allow compensation for grief, mental anguish, and suffering despite "strongly-

14  entrenched policy against recognition of damages for mental anguish" in wrongful death

15  of a child cases. *Id*. at 94, 96. The Blanchards argue that the 2019 amendments to RCW

16  4.24.010 command the same result.

17       The Blanchards argue further that "whether the loss of Heather's companionship

18  and support proximately caused Roy's loss of earning capacity is a factual question for

19  the jury." Dkt. 44 at 20. They rely on *Pacheco v. United,* 200 Wn.2d 171 (2022). The

20  plaintiff mother there was mistakenly given a flu shot instead of a birth control shot and

21  she subsequently became pregnant. The baby was born with brain condition that caused

22

1  permanent disabilities. The parents sued pursuant to Federal Tort Claims Act (FTCA)[3]

2  for negligent reproductive healthcare. The district court awarded damages to the parents

3  in part for mental anguish and emotional stress. The Ninth Circuit certified the following

4  question[4] to the Washington Supreme Court: "Under claims for negligent reproductive

5  health care, does Washington law allow extraordinary damages for costs associated with

6  raising a child with birth defects when defendant(s) negligently provided contraceptive

7  care even though plaintiff(s) did not seek contraceptives to prevent conceiving a child

8  later born with birth defects?" *Id.* at 180. The Court answered "yes," and affirmed the

9  award. Its reasoning included that the factual determination of whether the harm was

10  foreseeable is a question for the jury: "Therefore, the foreseeability of [the baby's brain

11  condition] is not a question of law as to 'whether duty exists.' Instead, it is a question of

12  fact, which asks 'whether the kind of harm which actually occurred should have been

13  foreseen' based on the evidence presented." *Id.* at 190 (internal citations omitted). The

14  Blanchards argue that Roy's career change stemming from his grief is a similarly

15  foreseeable consequences of Heather's death and is therefore a question of fact that

16  should go to the jury.

17      The Blanchards assert that "economic damages" and "noneconomic damages" in

18  RCW 4.20.010 was not further defined in the amendments because it was already defined

---

[3] Federal Tort Claims Act (FTCA), Pub. L. No. 79-601, 60 Stat. 812-852,

[4] The Washington Supreme Court exercised its discretion to reformulate the question slightly to the phrasing in this Order. *Id.* at 179.

by RCW 4.56.250(1)(a)–(b). This definitions section, which the government correctly

observes was repealed in 2023, defines the damages as follows:

> (a) "Economic damages" means objectively verifiable monetary losses, including medical expenses, loss of earnings, burial costs, loss of use of property, cost of replacement or repair, cost of obtaining substitute domestic services, loss of employment, and loss of business or employment opportunities.

> (b) "Noneconomic damages" means subjective, nonmonetary losses, including, but not limited to pain, suffering, inconvenience, mental anguish, disability or disfigurement incurred by the injured party, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation, and destruction of the parent-child relationship.

Dkt. 44 at 18.

The Court determines that the wrongful death statute, RCW 4.20.020, does not allow recovery for Roy's lost wages or mental anguish. The Blanchards are correct that the 2019 amendments are retroactive and that the Court must therefore construe them liberally.  Even so, the amendments do not support upending decades of precedent precluding recovery for mental anguish under RCW 4.20.020. *See State v. Ervin*, 169 Wn.2d 815, 825 (2010) (en banc) (presume that the legislature is "familiar with judicial interpretations of statutes and, absent an indication it intended to overrule a particular interpretation, amendments are presumed to be consistent with previous judicial decisions.") (citation omitted). As the Washington Supreme Court reasoned in *Wilson v. Lund*, we must assume the legislature "was aware of [Washington's] strongly-entrenched policy against recognition of damages for mental anguish" in previous interpretation of RCW 4.20.010. The Court can safely assume that the legislature was also aware that in contrast to wrongful death actions under RCW 4.20.010, plaintiffs are able to recover for

1    mental anguish in wrongful death of a child actions under RCW 4.24.010. The House

2    Report summarizing the 2019 amendments to both statutes is explicit that mental anguish

3    is recoverable under the wrongful death of a child act:

4        The statute [RCW 4.24.010] lists the following recoverable damages:
         medical, hospital, and medication expenses; loss of the child's services and

5        support; loss of the child's love and companionship; and injury to, **or
         destruction of, the parent-child relationship, which includes mental

6        anguish, grief, and suffering**.

7    House Bill Report, H.B. 1135, 66th Leg., 2019 Reg. Sess., at 3 (Wash. 2019) (emphasis

8    added). Significantly, the report's notes focus on the "destruction of the parent-child

9    relationship" language in the statute to "include" mental anguish and grief recovery. This

10   reflects the decision in *Wilson* where the court concluded that the 1967 addition to the

11   statute of the phrase "destruction of the parent-child relationship" triggered recovery for

12   mental anguish and grief: "We construe the language 'loss of love . . . and . . . injury to or

13   destruction of the parent-child relationship' To provide recovery for parental grief,

14   mental anguish and suffering as an element of damages intended by the legislature[.]"

15   *Wilson*, 80 Wn.2d at 96. If the legislature had wanted to upend the longstanding bar on

16   recovery for mental anguish under for wrongful death statute RCW 4.20.010, it could

17   have added language to explicitly call for it, or language comparable to "destruction of a

18   relationship" phrase in the wrongful death of a child actions under RCW 4.24.010. It did

19   neither.

20       Instead, it added that plaintiffs can recover "economic and noneconomic" damages

21   in an apparent effort reflect the caselaw that had long allowed plaintiffs to recover such

22   pecuniary losses. The House Bill Report describes the legislature's awareness of the

caselaw allowing such recovery in its description of pre 2019 amendments wrongful

death statute:

> General Wrongful Death Action: Under a general wrongful death action, a decedent's personal representative may bring a cause of action on behalf of specified beneficiaries for damages they suffered as a result of the decedent's death. **The statute does not specify the types of damages that are recoverable; however, under case law actual pecuniary losses are recoverable**. "Pecuniary losses" include not only actual monetary losses, but also intangible losses such as the loss of the decedent's support, services, love, affection, care, companionship, society, and consortium.

House Bill Report, H.B. 1135, 66th Leg., 2019 Reg. Sess., at 2 (Wash. 2019) (formatting

omitted) (emphasis added). This interpretation squares with the House Bill's summary of

the amendments to the wrongful death statute, describing the statute's change to available

damages:

> Damages. **A specific statement is added** that both economic and noneconomic damages are recoverable against the person causing the death in such amounts as the trier of fact determines to be just under the circumstances of the case

*Id*. at 4.

Such an interpretation does not render the amendments "mere surplusage," but

rather squares with the legislative history and assumes the legislature's knowledge of

what language is needed to trigger recovery for mental anguish when decades of caselaw

ban it. Unlike the "'loss of love . . . and . . . injury to or destruction of the parent-child

relationship' language that the Washington Supreme Court contended with when

determining whether to allow recovery for mental anguish for the wrongful death of a

child statute in *Wilson*, the 2019 added language of "economic and non-economic"

damages in the present statute is not unique. *Wilson*, 80 Wn.2d at 99. The terms

1    "economic and noneconomic," are known to judges and to borrow from *Wilson*, "old

2    hat." *Id*. The legislature's decision to employ those terms rather than add language that is

3    unique or explicitly allows for mental anguish indicates it desired to allow for the types

4    of pecuniary losses detailed in preceding caselaw.

5        The repealed definitions section, RCW 4.56.250(1)(a)–(b), does not save the

6    Blanchards' position. The broad definitions are illustrative, but contain examples that are

7    not a "one size fits all" for the various wrongful death and survival statutes. The

8    definitions include some examples that make no sense in the wrongful death context,

9    such as "loss of use of property" or "cost of replacement or repair" in the economic

10   damages section.

11       The Washington Pattern Jury instructions interpreting the wrongful death statutes

12   offer persuasive authority that the Blanchards cannot collect for Roy's lost wages or

13   mental anguish. A committee that includes judges, law professors, and practicing

14   attorneys draft the pattern instructions. The fact that a pattern jury instruction is approved

15   by the Committee does not necessarily mean that it is approved by the Washington

16   Supreme Court, however "pattern instructions generally have the advantage of thoughtful

17   adoption and provide some uniformity in instructions throughout the state." *State v.*

18   *Bennett*, 161 Wn.2d 303, 307–08 (2007). It is telling that even after the 2019

19   amendments, the RCW 4.20.010 pattern damages instruction still defines economic

20   damages as allowing recovery for the decedent's lost wages, and non-economic damages

21   as loss of consortium. There is nothing in the pattern instruction that supports a surviving

22   spouse's claim for mental anguish, let alone for a loss in earning capacity springing from

1    mental anguish. *See* 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 31.02.01 (7th ed.)

2    The comment on the WPI for wrongful death of a child that cautions that "the recovery of

3    the parents' personal grief, mental anguish, and suffering as a result of the child's death is

4    *not recoverable* under RCW 4.20.010 et seq" also weighs against allowing Roy to

5    recover his lost wages stemming from mental anguish. Wash. Pattern Jury Instr. Civ.

6    WPI 31.06.01 (7th ed.).

7        The Blanchards' argument that "whether the loss of Heather's companionship and

8    support proximately caused Roy's loss of earning capacity is a factual question for the

9    jury" and reliance on *Pacheco v. United,* 200 Wn.2d 171 is unavailing. Dkt. 44 at 20.

10   Pacheco dealt with a common law action for negligent reproductive health care. The

11   wrongful death claim here is statutory, not in the common law. *See Philippides v.*

12   *Bernard*, 151 Wn.2d 376, 389–90 (2004) (declining to recognize a common law cause of

13   action for loss of consortium for parents of adult children in wrongful death action

14   because it would directly conflict with existing statutes). Because RCW 4.20.010 does

15   not allow Roy to collect for his lost wages springing from grief, the Blanchards cannot

16   use common law principals of foreseeability to evade that statute's restrictions on

17   recovery. Finally, the complete absence of any case allowing a surviving spouse to

18   recover for their own lost wages under RCW 4.20.010 since the 2019 amendments is

19   telling.

20       Because the estate's statutory damages do not include a beneficiary's personal lost

21   wages under RCW 4.20.010, the government's motion for summary judgment dismissing

22   Roy's claim for personal lost wages is **GRANTED**.

1

**D.    Motion to exclude experts**

2

  **1.    Legal standard**

3

  A qualified expert may testify in the form of an opinion or otherwise only if the

4

proffered testimony is both relevant and reliable. Fed. R. Evid. 702; *Teradata Corp. v.*

5

*SAP SE*, 124 F.4th 555, 566 (9th Cir. 2024) (citing *Daubert v. Merrell Dow*

6

*Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 and *Daubert* impose on the

7

district court a "gatekeeping" duty to ensure that opinion testimony is relevant and

8

reliable, and an expert's opinion should be excluded if it does not have a reliable

9

foundation or if it is not based in the knowledge and experience of the relevant discipline.

10

*Sonneveldt v. Mazda Motor of Am., Inc.*, 2024 U.S. App. Lexis 32836, *3 (9th Cir. Oct.

11

21, 2024) (citing *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010)). "Expert

12

opinion testimony is relevant if the knowledge underlying it has a valid connection to the

13

pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in

14

the knowledge and experience of the relevant discipline." *Surgical Instrument Serv. Co.*

15

*v. Intuitive Surgical, Inc.*, 2024 U.S. Dist. Lexis 81690, *5 (N.D. Cal. March 31, 2024)

16

(quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 739 F.3d 960, 969 (9th Cir.

17

2013)). When an expert meets the Rule 702 threshold the expert may testify, and the jury

18

decides how much weight to give that testimony." *Primiano*, 598 F.3d at 565.

19

  **2.    Mr. Choppa**

20

  The government argues that if Roy's claim for lost earnings is dismissed, Mr.

21

Choppa's opinion should be excluded in its entirety. Dkt. 41 at 14. Mr. Choppa is a

22

"Vocational Assessment and recommendations" expert. *Id*. (quoting Choppa Rpt. at 1).

According to him, "[a] vocational assessment is a determination of an individual's ability to work and earn money." Choppa Rpt. at 8. The government argues that if Roy "is not entitled to recover lost wages for his decision to quit working at the bank and become a barber, then Mr. Choppa's opinion does not logically advance a material aspect of Plaintiffs' case rendering it inadmissible pursuant to FRE 702(a)." The Blanchards respond that Mr. Choppa's testimony is "relevant and admissible on the issue of earning capacity in both Washington and federal courts, as it helps establish the necessary factual connection between the wage loss and the underlying event" and that his "observations address not only Roy's wage-earning capacity but also encompass other losses recognized as 'subjective, nonmonetary losses,' such as 'inconvenience,' related to the ongoing effort required for Roy to restore his emotional wellbeing and return his life [.]" Dkt. 47 at 15 (citations omitted).

Given its dismissal of Roy's lost earnings claim, the Court concludes that Mr. Choppa's opinion does not meet Rule 702's relevance requirement. Because the Court has already concluded that Roy's lost wages are not a "pertinent injury" recoverable under RCW 4.20.010, Mr. Choppa's opinions surrounding his earning capacity and what lost wages are attributable to the loss of Heather are not helpful to the jury. To the extent that Mr. Choppa offers opinion on "other losses" such as Roy's "inconvenience" related to "restoring his emotional wellbeing," this information does not logically advance a material aspect of the Blanchards' case and falls outside the expertise of a vocational expert. The government's motion to exclude Mr. Choppa's testimony in its entirety is **GRANTED**.

1    **E.    Dr. Hedrick's testimony**

2           The government also moves to exclude the testimony of Dr. Marsha Hedrick,

3    Ph.D., ABPP. Dr. Hedrick evaluated Roy and his sons and formed opinions on how

4    Heather's death caused them psychological harm. The government argues that "the only

5    purpose for Dr. Hedrick's testimony is to establish that the Blanchard family suffered

6    mental anguish, grief, and other psychological injuries due to the loss of [Heather]" and

7    that "[b]ecause the wrongful death statute does not permit beneficiaries to recover for

8    grief-related damage, Dr. Hedrick's testimony is not relevant to any issue in this case and

9    should be excluded [.]" Dkt. 41 at 15. In opposition, the Blanchards repeat their

10   arguments that the 2019 amendments to the wrongful death statute, RCW 4.20.010, made

11   the cases precluding recovery for mental anguish obsolete and argue that Dr. Hedrick is

12   relevant to the jury to assess the noneconomic harms resulting from Heather's death.

13          The Court has already rejected the Blanchards' interpretation of the 2019

14   amendments to RCW 4.20.010 and concluded that the amendments did not broaden the

15   recoverable damages to include mental anguish and grief. Accordingly, Dr. Hedrick's

16   testimony aimed at damages for mental anguish and grief is not relevant to a "pertinent

17   injury" under the wrongful death statute and is excluded under Rule 702. To the extent

18   that she offers testimony on loss of consortium, that topic is within the common

19   knowledge and experience of a lay person and thus her expertise is unnecessary.

20

21

22

1

### III.  ORDER

2      Therefore, it is hereby **ORDERED** that the government's motion for partial

3  summary judgment and to exclude expert testimony, Dkt. 41, is **GRANTED**. The motion

4  to dismiss the Blanchards' motion for NIED is **GRANTED**. The motion to dismiss the

5  Blanchards' claim to collect Roy's lost wages is **GRANTED**. The motion to exclude the

6  testimony of both Mr. Choppa and Dr. Hedrick is **GRANTED**.

7      Dated this 5th day of August, 2025.

8

9

10

11                        BENJAMIN H. SETTLE
                         United States District Judge

12

13

14

15

16

17

18

19

20

21

22